argument of the morning is in the United States v. Tyron Offutt, Appeal No. 23-2211. Ms. Christensen. Good morning, Your Honor. May it please the Court. My name is Joanna Christensen. I represent the appellant, Tyron Offutt. Unless the Court has questions on the flight of destruction issue, I'm going to focus on the denial of counsel at sentencing issue, given the amount of time I have. Mr. Offutt is not the easiest client to represent in the District Court. He had schizophrenia, PTSD, anxiety, none of which were medicated at the time, had had a stroke, and had an IQ of 84. All three counsel moved to withdraw, citing conflicts and communications issues with him. No other information in the record as to the nature of those conflicts, the depth of those conflicts, or his substantive behavior. The District Court found by his conduct that he had waived counsel for sentencing, but made no findings about the nature of the conduct that caused that waiver. Importantly, and to start out with, this Court usually starts with the Feretta colloquy question. There was no formal colloquy between the District Court and Mr. Offutt in this case. The Court had several hearings where he admonished Mr. Offutt if he continued in some unspecified behavior, that he would lose the right to counsel. But the Court never talked to him about what that really meant, and then by the time we get to pre-sentencing, after the conviction, the Court says, you're going to do it on your own, and doesn't give him much of a colloquy about what that means. The second factor is whether he understood the danger, and then the third factor is kind of part of that is his background and characteristics. He never indicated, as a matter of fact, he repeatedly said he wanted counsel. So in some cases, this Court has found that that is showing that he understood the danger of representing himself. But you have to look at that through the lens of the rest of the case. His cognitive deficits that I've already talked about, but also that he had a GED, and that the Court did not consider those factors at all. In fact, the Court was concerned about its calendar and how fast this case was moving, which I might add started at the height of the pandemic in January of 2021, where almost no cases were moving quickly, counsel or no counsel issues. And the Court doesn't consider that Mr. Offit, oh, the Court considered that the United States Attorney had to postpone or delay a vacation, and the Court threatened to put Mr. Offit in jail if he continued with the conduct that is yet unspecified in the record. So all of those put together is an unreasoning and arbitrary decision that Mr. Offit waived his right to counsel. So what should a district court have done? Would a district court have just forced him to deny his motion, to have one of his last counsel withdraw, and to force him to work with that counsel? I'm not really, right? As a prior district court judge, I'm just trying to figure out, like, what is a district court to do? Right. It's a difficult situation, and I think both for defense attorneys and district court judges, you have this push and pull. But what the Court did not do in this case that was key was give him the option to keep his third appointed counsel for sentencing. No, he did. He said... At that last hearing, he said, I'm going to grant the motion, but then he said, there was a timeout, right? Right. Maybe it was too late to kiss and make up at that point. But there was that option, and the judge had made very clear when he let Ms. Grosser go, not going to be a fourth lawyer. Yes. So, this is it. And he reiterated that when he's dealing with Mr. Bailey's withdrawal. I think the Court said, you can talk to Mr. Bailey about it. I think the record's unclear what then occurred, because then they come back... Well, they went off the record, sure. They went off the record. But at a point when Offit knew, it's going to be Bailey or I'm on my own. I think the Court said, no, you're going to retain someone on your own. I think that when they come back, that's the end result. Well, that was always an option, right? Sure. And that had been talked about several times. And that's always an option, regardless. But the other option in this case was to retain Mr. Bailey as standby counsel, which the District Court did not consider at all. That's not where you have a defendant who's clearly struggling and struggling with his attorneys, with communication issues, which is about all we know. If there's not enough in the record, I think the Court has abused its discretion in this case in making no findings. And then when this Court does the de novo review, there's nothing there to support the idea that he knowingly waived by his conduct. The District Court also reviewed with him what he or an attorney would need to do at sentencing, right? He said, well, you'll get a PSR. You don't need to file any objections to that. Then you have to go through the sentencing factors. And I know that he didn't do a formal threat hearing, but he basically outlined what further work needed to be done. And despite that, Mr. Offit still chose to go the route of having Mr. Bailey withdrawing. Why isn't that a knowing waiver? I don't think Mr. Offit necessarily at that point chose it. I think that that was really, he said you can retain someone or you can represent yourself. Here's how you do it. Or you can keep Mr. Bailey, right? That, my reading of that transcript, portion of the transcript is not that he was, he said I'm going to grant the motion to withdraw for Mr. Bailey. And then you can either be pro se or retain someone. That's my reading of the transcript of what happened at that point. Now there are multiple back and forth about you can keep this person further before that. But at that moment, the Court said I'm going to grant the motion to withdraw. So is your point that, is the point that he's just not capable of processing that? Because as you say it, as you say it here in the courtroom, you would think he would say, well, okay, if Bobby Bailey is gone, that means I'm either going to represent myself or as we're talking about within this, what, 14 days or some kind of time period. 21 days. I got to go find a lawyer. Right. But if options B and C are pursued, Bobby Bailey's gone. He ain't here. Right. Is your point, he can't, he didn't, Mr. Offit didn't understand that? That he thought that if he represents himself, he can say, well, I still want Bailey to come back? Or if he struck out in the 21 days, that he could then say I want Bailey back? I don't think, I think he understood that Bailey was gone. I don't think I don't think, and certainly as I read it, there was no option to keep Bailey there, either standby or to continue with him. And I think that that's what Mr., what's lacking in this transcript is that, say, listen, I recognize you have cognitive issues. I also recognize you can be a difficult client, but I'm going to have you, you know, try and work with him. See if you can try and work with him. And then we have these other options as well. You get to pick one. Now, if he doesn't make a choice, which we also often see is I'm not going to pick, or I don't know, or, you know, and then the court can force it upon him, but without giving him the option to keep Mr. Bailey, that's, that's the problem, problem here. So, I see that I'm into my rebuttal time. Unless the court has questions, I'll preserve the rest of that time. Thank you. Yep, very well. Mr. Carraway? Good morning, Your Honor. May it please the court. I'm Daniel Carraway on behalf of the United States. The district court in this case did not plainly err when it instructed the jury as to the proper use of defendant's flight evidence that was presented without objection at trial, and it found that he knowingly and intelligently waived his right to counsel at the sentencing proceedings. Accordingly, we ask that you affirm the conviction and sentence in this case. I do want to start with the standard of review for the jury instruction question. This is where the parties disagree as to this court's standard of review. Plain error applies in this case because there was not a specific objection at trial under Rule 30D as to the flight instruction that was given to the jury. As this court noted in Jackson, a party's objection to a jury instruction must satisfy the requirements of Rule 30 and state, quote, distinctly the matter to which he objects and grounds of his objection. And the purpose of that is to alert the district court as to the potential problem, to focus the court in on the nature of exactly what the objection is and to bring it into focus so the district judge knows exactly what the objection is. The appellant in this case failed to raise a specific objection at trial. In fact, his objection was simply that there was no evidence of flight that was presented. This court in Wheeler addressed a- You don't think implicit in that he was saying flight to evade, capture, or prosecution? Because he's saying, I went to my mom's. I fled to my mom's house. So that seems hardly flight to evade, capture, or prosecution because don't So the objection that was lodged at trial was that there was no objection that Mr. Offit fled from police. That was the end of the objection. There was no evidence, right? No evidence that he, right. Correct, Your Honor. Now, what the objection is on appeal and what the- So did you take that to mean that there's simply no evidence that he ran after the car stopped? Because he clearly ran. He ran to his mom's house. So that's why I think that can't be what that means. It's got to mean there's no evidence that he fled from the police to avoid capture or prosecution. No, Your Honor. What I take that to mean is that his flight was not- that him running from the police was not flight from the police, which was exactly what he stated. He said there was no evidence that he fled from police. Now, on appeal, the appellant's brief gets into Williams, and really what their objection is on appeal, and it's like the objection that was in Wheeler, their objection on appeal is that there was no evidence that that was indicative of a consciousness of guilt, that it was a consciousness of guilt as to the alleged crime or actual guilt of the charged crime. In Wheeler, the defendant below in the district court objected to instruction. It was a mens rea instruction, and it was the inclusion of good faith in the definition of willfully. And then on appeal, the objection was modified in a similar manner that it is here in that they, on appeal, the Wheeler argued that there was a known legal duty or some type of legal duty that was required in that mens rea. This court held in Wheeler that those were substantively different objections. Mr. Kerwick, putting the waiver issue to the side for a second, getting to kind of the record in this case. As I understand it, Mr. Offit did not- Mr. Offit did not know that law enforcement had obtained a search warrant or were going to search his house. Is that correct? There was no evidence in the record that he knew they had a search warrant at the time of the stop. No, Your Honor.  And so what are your best facts that would tie his flight from the police to his knowledge that it was based upon some perspective or current prosecution? Yes, Judge Lee. The stop occurred immediately after he left his home. How soon after? The testimony in the record says immediately. Do we know, like, in a matter of, like, a block, two blocks, three blocks? Was it just outside the driveway? So the testimony as I read it from the record, Your Honor, is that agents were preparing to execute the search warrant of the residence once Mr. Offit left that residence that they had under surveillance. They attempted to stop him. He did initially stop and then immediately fled. The evidence supporting, while he did not know that they had a search warrant, this is a residence that he had just come from, that upon the search warrant uncovered large amounts of methamphetamine, two loaded firearms, significant amounts of United States currency. And this is also the residence where controlled purchases approximately two weeks prior to the stop had occurred. Undoubtedly, Mr. Offit may not have known at that time that they were controlled purchases, but he certainly knew he was selling methamphetamine out of that house and actually had a stash remaining at the house. So what was your theory based upon, you know, if it was flight for prosecution, what is your theory about why he went to his mother's house, which I think he owned, right? So did he have title to that house? I don't recall if Mr. Offit owned that house. I believe family lived there. Right. And it's pretty close, right? It's within a mile or certainly within, it seems like it's pretty close. Testimony of the officer was that it was several blocks away, I believe. So what is your theory on why driving several blocks away would be consistent with flight from a conscious, you know, fear of prosecution? So this is an individual that just left a house that had methamphetamine, it had U.S. currency, it had firearms in it. He knows that he utilizes that residence to sell methamphetamine. That's evidenced by the fact that counts three and four of this superseding indictment accounted for controlled buys that occurred in that same residence on Cherry Street in Centralia. So in an effort to distance himself, the way I read it and the way the evidence was presented at trial, is that immediately upon coming out of that house, when he stopped by law enforcement, his flight is in an effort to distance himself from that house. So I take it the law enforcement didn't search the house that his mother lived in, right? There was a search of a safe that I believe was located at the mother's house. And did they find any contraband or anything that would indicate that there was any drugs being sold out of that house? I believe there was some United States currency found in that safe. That would be indicative of just a lot of U.S. currency, is that what you're saying? That's correct, Your Honor. Notably, in this case, the appellant has pointed to no prejudice in his brief of this instruction. The government's position under this plein air analysis is that they must show a reasonable probability that but for that error, the outcome of the proceeding would have been different. Now, this instruction was careful to warn about both the proper and the improper use of this evidence. It provided the inference to the jury that they were not required to use it in any certain way. It wasn't one-sided, and as this court has found, no prejudice in cases like Skozen, in similarly cautionary instructions. So, too, this instruction was careful to highlight the proper use of that evidence. There was overwhelming evidence of his guilt. Trial evidence consisted of audio-video recordings of controlled buys. The confidential source actually testified about the controlled buys. It's those points, Mr. Carraway, that makes it a bit of a mystery. It's the government's choice, not the court's choice. Why in the world you would have ever sought a flight instruction in this case? Well, I think it's important to note, Your Honor, the evidence that came in of defendant's flight came in without objection. There was no challenge to that evidence. The provision of that instruction properly put that evidence into the context for the jury. The proper inferences they could and could not, and the fact that those inferences were not mandatory. We've been pretty clear, maybe not recently enough, but in Williams we said they're discouraged, I think, to avoid these exact kind of dialogues we're having in the courtroom. These instructions are discouraged. They just should not be given flight instructions like this. Yes. Because you get these questions about fact patterns, what reasonable inferences you can draw. There's all kinds of reasons people are fleeing from police, et cetera. I mean, it's before us. There's no question about it. I know you're arguing it, but the point you just made about the evidence being overwhelming, that's when I look at this and I think, why in the world is the government seeking a flight instruction in a case like this? Yes, Your Honor. The evidence came in at trial. There was testimony about the evidence. Yeah, but we're not talking about the evidence. We're talking about the instruction. Correct, and it's the government's position, Your Honor, that that instruction put that evidence into context and provided both the proper and the improper use for the jury so they knew exactly what they could consider that evidence for. All right. Thank you, Your Honor. You're welcome. Thanks to you. Ms. Christensen, you've got some rebuttal time. Thank you, Your Honor. Well, I guess I will argue a little bit about the flight instruction then. So the objection was to no evidence, and then given this court's case law about this evidence not being appropriate, the court and the government made no attempt to support it under that case law. So I think that that's enough of an objection to bring it before this court, not under plain error. But was the district court on notice that it was supposed to do that because it wasn't requested? So in other words, the objection when the defendant objected, it didn't say, oh, you know, there are no facts, and by the way, there's nothing that would satisfy the various requirements that we set forth in Williams. Sure. That would have been a better objection. And, you know, I think what we have is not quite there, but we do have the government asking for a Pattern 6 circuit instruction, and I think that that perhaps was a red flag. That was a red flag for me when I read it. It was like, why are we going to the 6th circuit about a flight instruction and then, you know, the disfavored evidence? So I did want to correct a little bit about what I said about the I will allow him to withdraw. So on page 16 of my brief, it's the hearing before the sentencing hearing where the judge is talking about Bobby Bailey and says, I will allow him to withdraw, but you need to know I won't give you another lawyer. Later on it gets a little confused because the court says, even if you're not able to find another attorney, do you prefer to go to sentencing acting on your own behalf as opposed to having Mr. Bailey serve you? And I think there is when it's clear Mr. Offit doesn't quite get it, and this is on page 17 of my opening brief. He says no, but it's unclear what he's saying no to. I'll try to get an attorney to help me. I had a question about the guidelines. I'm trying to understand a career offender. I need an attorney to help me. I think from that exchange it's clear that he doesn't really understand what's happened. Did he ever request for an attorney after that, after he couldn't get private counsel? Did he ask the courts? Did he say, Judge, you know, I'd like an attorney now that I can work with? Yeah, so then they have the sentencing hearing in early June. And, again, I believe he, which is further on, he asked for an attorney. He says that, you know, he's ready to argue his motion, but he doesn't think he can. He made a request for appointed counsel prior to that. And then the court then makes additional findings about why it made the decision to deny him counsel. And it's mostly about, you know, this is not a complicated case. I sat through trial and there are no objections here. So I think that's putting the wrong analysis on it. If the judge thinks, oh, everything's okay here because we ended up okay and I don't see any issues, that's not Mr. Offit by his conduct. That's not waiving counsel. So unless the court has any other questions, we ask that you reverse and remand, either for a new trial or new sentencing. Okay. Ms. Christensen, thanks to you, Mr. Careway. Many thanks to you. Appreciate it very much. We will proceed to our fifth argument of the morning.